*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 24**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant,*

*v.*

SCOTT RICHARD STEWART,
*Appellee.*

No. 20160484
Filed June 12, 2018

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Judge Randall N. Skanchy
No. 131911542

Attorneys:

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Solic. Gen.,
Jacob S. Taylor, Asst. Att'y Gen., Salt Lake City, for appellant

J. Morgan Philpot, Alpine, for appellee

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 The State charged Scott Richard Stewart with, among other crimes, one count of participating in a pattern of unlawful activity. The State also alleged that Stewart had committed securities fraud and that some of those crimes were part of his pattern of unlawful activity. Because the statute of limitations had run on a number of the alleged acts, Stewart moved to exclude them. Stewart argued that a pattern of unlawful activity cannot be based on crimes that the State could not separately charge because the statute of limitations had run. The district court agreed and granted Stewart's motion. The

State seeks interlocutory review of that decision. This requires us to interpret the Pattern of Unlawful Activity Act, Utah Code sections 76-10-1601 to 1609. We conclude that the statute does not prevent the State from using evidence of acts on which the statute of limitations has expired to prove a pattern of unlawful activity. We reverse the district court's order and remand.

## BACKGROUND

¶2 In 2013, the State charged Stewart with, among other things, thirteen counts of securities fraud or, in the alternative, thirteen counts of communications fraud.[1] The State also charged Stewart with one count of a pattern of unlawful activity. After the court bound Stewart over for trial, we decided *State v. Taylor*, 2015 UT 42, 349 P.3d 696, and *State v. Kay*, 2015 UT 43, 349 P.3d 690. Those cases concluded that securities fraud and communications fraud are not continuing offenses.[2] *Taylor*, 2015 UT 42, ¶ 24; *Kay*, 2015 UT 43, ¶ 23. These rulings undercut the State's prosecution because the State relied on the theory that some of the counts of securities fraud and communications fraud were continuing offenses. In response, the State filed an amended information to exclude several of the charges on which the statute of limitations had expired. The amended information charged two counts of securities fraud, one count of sale of an unregistered security, one count of unlicensed investment advisor activity, and one count of a pattern of unlawful activity.

¶3 The State indicated that it planned to call twelve of Stewart's investors to testify about the investments they made on Stewart's

---

[1] Because this case comes to us on an interlocutory appeal, the allegations we recite have not been tried and therefore remain allegations. "On interlocutory review, we recount the facts as alleged and in a light most favorable to the ruling below." *State v. Taylor*, 2015 UT 42, ¶ 2 n.2, 349 P.3d 696.

[2] In *Taylor*, we explained that generally, the limitations period for an offense "begins to run when a crime is 'committed.'" 2015 UT 42, ¶ 12 (citation omitted). However, "the Legislature has structured the elements of some offenses in such a way that a perpetrator continues to commit the offense so long as he continues to satisfy the elements." *Id.* When structured this way, "criminal liability attaches when every element is satisfied, [but] the statute of limitations does not begin to run until the perpetrator ceases to satisfy the elements of the crime. At that point, the whole arc of criminal conduct is aggregated into a single criminal violation." *Id.*

advice—investments they claim Stewart had defrauded them into making. In other words, the State intended to call witnesses to testify concerning the untimely charges of securities fraud that the State had voluntarily dismissed in response to *Kay* and *Taylor*. The State represented that it planned to use the investor testimony to prove the pattern of unlawful activity charge. Stewart moved to exclude that testimony arguing that time-barred offenses cannot support a pattern of unlawful activity.

¶4 The district court excluded the evidence. The district court explained, "*Kay* clarifies that securities fraud is not a continuing offense, and a claim for pattern of unlawful activity must be predicated on acts that, themselves, would be chargeable."[3] The district court quoted *Kay*'s conclusion that "if the actual communication falls outside the statute of limitations, the State cannot rely on the presence of a predicate scheme to extend the limitations period." (Quoting *Kay*, 2015 UT 43, ¶ 18). The district court concluded that "[b]ecause the predicate acts relied on by the State regarding [the original victims] are outside the statute of limitations for a communications fraud claim, they may not be used to prove the pattern of unlawful activity charge." We granted the State's petition for interlocutory appeal to review that conclusion.

---

[3] This appears to be a misstatement, as *Kay* involved communications, and not securities, fraud. 2015 UT 43, ¶ 1. In its amended information, the State explained that "[t]he alleged unlawful acts which constitute the pattern of unlawful activity include *but are not limited to* [instances of securities fraud] as described above in counts 1 through 4." Although not entirely clear from the amended information, it appears that the State intended to rely exclusively on alleged securities fraud to establish the pattern of unlawful activity. Further, the proposed jury instructions refer only to securities fraud, sale of an unregistered security, and unlicensed investment advisor activity in its pattern of unlawful activity instruction. And finally, the State explains in its brief that the district court "correctly noted that the relevant predicate acts here are securities fraud charges, but appears to mistakenly refer to them later in its order as communications fraud charges." However, whether the underlying unlawful activities are instances of communications fraud or instances of securities fraud is immaterial to our analysis.

## ISSUE AND STANDARD OF REVIEW

¶5 The State contends that the trial court erred by excluding evidence of predicate acts that were part of the alleged pattern of unlawful activity. The State's challenge requires us to interpret Utah's Pattern of Unlawful Activity Act. Specifically, we must determine whether the prosecution may establish a pattern of unlawful activity using evidence of individual acts that are time barred under the relevant statute of limitations. *See* UTAH CODE § 76-10-1602(2). "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 (citation omitted).

## ANALYSIS

### *Utah's Pattern of Unlawful Activity Act*

¶6 Utah's Pattern of Unlawful Activity Act (Act) criminalizes certain acts involving a pattern of unlawful activity. The Act proscribes a principal of a pattern of unlawful activity from using or investing the income derived from the unlawful activities. UTAH CODE § 76-10-1603(1). It also penalizes the acquisition or maintenance of an interest in or control of any enterprise that undertakes a pattern of unlawful activity. *Id.* § 76-10-1603(2). Finally, the Act forbids a person from participating in, or conducting, the affairs of an enterprise engaged in a pattern of unlawful acts. *Id.* § 76-10-1603(3). To understand the Act and this dispute, it helps to first focus on the definitions of "unlawful activity" and "pattern of unlawful activity" as well as the Act's five-year "lookback" period.

¶7 Unlawful activity means "to directly engage in conduct or to solicit, request, command, encourage, or intentionally aid another person to engage in conduct which would constitute any offense" listed in the statutory definition. *Id.* § 76-10-1602(4). Unlawful activity also means "to attempt or conspire to engage in an act which would constitute any of those offenses, regardless of whether the act is in fact charged or indicted by any authority or is classified as a misdemeanor or a felony." *Id.* The statute lists ninety crimes and categories of crimes that can constitute unlawful activity. *Id.*[4]

---

[4] By way of example, these crimes include criminal violations of the Environmental Quality Code, criminal homicide, causing a catastrophe, theft, theft by deception, criminal usury, and mortgage fraud. *See* UTAH CODE § 76-10-1602(4)(b), (l), (q), (v), (w), (ll), (qq).

¶8 And a pattern of unlawful activity means:

> engaging in conduct which constitutes the commission
> of at least three episodes of unlawful activity, which
> episodes are not isolated, but have the same or similar
> purposes, results, participants, victims, or methods of
> commission, or otherwise are interrelated by
> distinguishing characteristics. Taken together, the
> episodes shall demonstrate continuing unlawful
> conduct and be related either to each other or to the
> enterprise.

*Id.* § 76-10-1602(2).

¶9 The Act also contains a five-year lookback period. The statute requires that "[a]t least one of the episodes comprising a pattern of unlawful activity shall have occurred after July 31, 1981. The most recent act constituting part of a pattern of unlawful activity as defined by this part shall have occurred within five years of the commission of the next preceding act alleged as part of the pattern." *Id.*

### Time-Barred Acts May Be Used to Establish
### a Pattern of Unlawful Activity

¶10 The district court concluded that to be considered part of the pattern, Stewart's alleged fraud must have occurred within the statute of limitations for a fraud claim. In other words, under the district court's interpretation, the State has to base the unlawful pattern upon crimes for which the statute of limitations has not run. Stewart urges us to accept this interpretation.

¶11 The State contends that the trial court misinterpreted the Act's plain language. The State argues that a straightforward reading of the statute reveals that time-barred counts can be used to demonstrate a pattern of unlawful activity.

¶12 "It is well settled that when faced with a question of statutory interpretation, 'our primary goal is to evince the true intent and purpose of the Legislature.'" *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citation omitted). "The best evidence of the legislature's intent is 'the plain language of the statute itself.'" *Id.* (citation omitted). We "presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." *Turner v. Staker & Parsons Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600 (citation omitted). "Wherever possible, we give effect to every word of a statute, avoiding '[a]ny

interpretation which renders parts or words in a statute inoperative or superfluous.'" *Id.* (alteration in original) (citation omitted).

¶13 Additionally, when interpreting statutes, "we 'presume[] that the expression of one [term] should be interpreted as the exclusion of another,'" and we "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." *Marion Energy*, 2011 UT 50, ¶ 14 (alterations in original) (citation omitted). However, "our plain language analysis is not so limited that we only inquire into the individual words and subsections in isolation; our interpretation of a statute requires that each part or section be 'construed in connection with every other part or section so as to produce a harmonious whole.'" *Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147 (emphasis omitted) (citation omitted).

¶14 As an initial matter, we note that the Legislature could have drafted the statute to expressly permit or reject the use of criminal acts that are outside the statute of limitations. It did not, and in the absence of an express statement, we are left to examine the statute for the best textual indications of what the Legislature intended. The State argues that the best interpretation of the statute is one that permits the pattern to include untimely criminal acts because the contrary interpretation—the one the district court adopted—renders the five-year lookback period meaningless. We agree.

¶15 The lookback period requires that "[t]he most recent act constituting part of a pattern . . . occur[] within five years of the commission of the next preceding act alleged as part of the pattern." UTAH CODE § 76-10-1602(2).[5] By its plain language, the lookback period requires that no more than five years separate the penultimate episode of unlawful activity from the most recent episode in the pattern. As noted above, the Act does not refer to the statute of limitations for the underlying crimes.

¶16 An examination of the definition of "unlawful activity" suggests that the Legislature intended that the lookback would serve as the only temporal consideration to establish a pattern of unlawful activity. Ninety crimes and categories of crimes, including both felonies and misdemeanors, fall within the definition of unlawful activity; each has its own statute of limitations. *See id.*

---

[5] The lookback period also requires that at least one of the episodes comprising a pattern of unlawful activity occur after July 31, 1981. UTAH CODE § 76-10-1602(2). That provision is not at issue here.

§ 76-10-1602(4).Prosecution for misdemeanor crimes, some of which fall under the definition of unlawful activity must be commenced within two years after the commission of the crime. *Id.* § 76-1-302(1)(b). Prosecution for felony crimes, subject to several exceptions, must be commenced within four years after commission of the crime. *Id.* § 76-1-302(1)(a). And certain crimes are not subject to a statute of limitations at all. *Id.* § 76-1-301(2). For example, the definition of unlawful activity includes assault, a misdemeanor subject to a two-year statute of limitations. *Id.* §§ 76-10-1602(4)(j), 76-5-102(2),(3), 76-1-302(1)(b). The definition also includes aggravated assault, a felony subject to a four-year statute of limitations. *Id.* §§ 76-10-1602(4)(j), 76-5-103(2), (3), 76-1-302(1)(a). And the definition encompasses aggravated kidnapping, a felony that is not subject to a statute of limitations. *Id.* §§ 76-10-1602(m), 76-1-301(2)(f).

¶17 If we read the statute to require individual instances of unlawful activity to be timely under their relevant statutes of limitations, we would read the five-year lookback out of the statute. By way of example, imagine a prosecutor who relies on three instances of misdemeanor assault to establish a pattern of unlawful activity. If the statute required all three instances of assault to be not time barred, all three instances must occur within the two year statute of limitations for misdemeanor crimes. This interpretation renders the five-year lookback period meaningless. And when faced with competing interpretations, we generally prefer the one that breathes meaning into each provision of the statute. *See Oliver v. Utah Labor Comm'n*, 2017 UT 39, ¶ 21, --- P.3d --- ("A proposed interpretation that is plausible in isolation may . . . 'lose[] its persuasive effect when we [seek to] harmonize [it] with the rest of' the statutory scheme." (alterations in original) (citation omitted)); *In re J.M.S.*, 2011 UT 75, ¶ 22, 280 P.3d 410 ("In essence, statute[s] should be construed . . . so that no part [or provision] will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." (alterations in original) (omission in original) (citation omitted)).

¶18 Stewart's main counter to the State's argument focuses on the Act's definition of unlawful activity. The statute defines unlawful activity, in part, as conduct "which would constitute any offense." UTAH CODE § 76-10-1602(4). Stewart argues that conduct which falls outside the limitations period is not chargeable and therefore cannot be deemed to be an offense. And Stewart finds some superficial support for that argument in our jurisprudence.

¶19 In *State v. Crank*, we noted that a "statute of limitations is not a mere limitation on penalty, but is a bar to prosecution. . . . The statute runs against the filing of [a] complaint or information; against the attempt to prosecute." 142 P.2d 178, 193 (Utah 1943). We concluded that "in effect, that as far as such offense is concerned, a man may not in law be considered as having committed it; he may not, within the spirit of the law be properly accused thereof or charged therewith." *Id.* at 193–94. We ultimately held that a "[d]efendant has a right to insist that a complaint or information in as far as it charges an offense barred by limitations be quashed." *Id.* at 193.

¶20 The flaw in Stewart's argument is that although a statute of limitations *may* serve as a bar to prosecution, it does not negate the illegality of conduct. In other words, a criminal act does not cease to be an offense just because the State cannot properly charge the defendant with the crime. This becomes plain when we remember that a "criminal statute of limitations is an affirmative defense that can be forfeited if not raised before or during trial." *State v. Jackson*, 2011 UT App 318, ¶ 35, 263 P.3d 540, *cert. denied*, 272 P.3d 168 (Utah 2012). Thus, our general discussion in *Crank* does not mandate a different result than the one we reach.

¶21 Finally, we note that the district court relied, in part, on language from *State v. Kay*, 2015 UT 43, 349 P.3d 690, to reach its conclusion. The court explained that *Kay* clarifies that communications fraud is not a continuing offense, and "a claim for pattern of unlawful activity must be predicated on acts that, themselves, would be chargeable."[6] Relying on *Kay*, the court explained that "'if the actual communication falls outside the statute of limitations, the State cannot rely on the presence of a predicate scheme to extend the limitations period.'" (Quoting *id.* ¶ 18). The court concluded that "[b]ecause the predicate acts relied on by the State . . . are outside the statute of limitations for a communications

---

[6] The district court's order states that "*Kay* clarifies that securities fraud is not a continuing offense . . . ." However, *Kay* examined the issue of whether or not *communications fraud* is a continuing offense. 2015 UT 43, ¶ 1. In *Kay*'s companion case, *State v. Taylor*, we relied on similar reasoning to conclude that securities fraud is not a continuing offense. 2015 UT 42, ¶¶ 18–24, 349 P.3d 696. Although it is unclear whether the district court intended to rely on *Kay* or *Taylor*, the logic of neither case answers the question presented here for the reasons discussed above.

fraud claim, they may not be used to prove the pattern of unlawful activity charge."

¶22 *Kay* examined the question of whether or not communications fraud is considered a continuing offense. *Id.* ¶ 9. We concluded that communications fraud is not a continuing offense, despite the State's argument that the language "'scheme or artifice' compels the conclusion that communications fraud is a continuing offense inasmuch as 'schemes continue as long as they are in operation.'" *Id.* ¶ 18. We acknowledged that "[a]mple authority recognizes that an ongoing criminal design or scheme is not the same as a continuing offense[,]" and "[e]ach are specific terms of art . . . ." *Id.* ¶ 19. The district court relied on our conclusion that "if the actual communication falls outside the statute of limitations, the State cannot rely on the presence of a predicate scheme to extend the limitations," *id.* ¶ 18, but this conclusion does not speak to the question of whether those communications could be used to prove an unlawful pattern.

¶23 The district court also relied on other language in *Kay* that suggested that the underlying instances of unlawful activity must be within the statute of limitations to form the basis of a pattern charge. After concluding that the charges for communications fraud were untimely, we noted that "because the pattern of unlawful activity charge was predicated on the four [untimely] charges of communications fraud, the district court correctly dismissed all of the charges . . . ." *Id.* ¶ 23. Although this language supports the district court's interpretation, in *Kay* we were not squarely presented with the issue that the State presses here—whether or not a pattern of unlawful activity may be based on untimely acts. In *Kay*, the State did not argue that the pattern of unlawful activity charge could stand alone without the underlying communications fraud charges. Nor did the State argue that anything else could sustain a pattern of unlawful activity charge. And because we were not presented with the issue in *Kay*, the language the district court relied upon—which comprises one sentence devoid of analysis—did not examine the statute or consider the arguments that the parties raise here.

¶24 More specifically, we did not address the five-year lookback period provision in *Kay*, nor did the parties advance an argument about its significance in interpreting the statute. Here, we are faced with a more specific problem. We are asked to decide, even if a pattern of unlawful activity charge is not a continuing offense, whether individual crimes that are outside of the relevant statute of limitations can form the basis of the charge. Here, the parties placed this argument squarely before us, and after considering conflicting

interpretations, we conclude that the reading that gives meaning to the five-year lookback provision is the better reading. Accordingly, we disavow the sentence in *Kay* that could be read to prohibit the use of untimely predicate acts to establish a pattern of unlawful activity.

## CONCLUSION

¶25 We conclude that the best reading of the Pattern of Unlawful Activity Act permits the State to base a pattern of unlawful activity on crimes on which the statute of limitations has expired. We reverse the district court's decision and remand.

––––––––––––